Margaret MOLL, Plaintiff and Appellant,

v.

Joseph P. MOLL, Defendant and Appellee.

Civ. No. 9095.

Supreme Court of North Dakota.

June 24, 1975.

Nelson & Eastman and Huseby & Backes, Fargo, for plaintiff and appellant; argued by Tom Eastman, Fargo.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendant-appellee; argued by Donald Hansen, Fargo.

ERICKSTAD, Chief Justice.

This appeal arises out of proceedings initiated by the plaintiff, appellant, Margaret P. Moll, wherein she sought a decree of absolute divorce from the defendant, appellee, Joseph P. Moll. We shall hereafter refer to the parties as Margaret and Joseph. A counterclaim was filed by Joseph.

The matter was brought to trial before the Cass County District Court on March 18, 1974, and tried without a jury. During the first day of trial the direct and cross-examination of Margaret was concluded, and defense counsel conducted his direct examination of Joseph.

When the proceedings were resumed on the morning of March 19, 1974, Margaret's counsel, Mr. Huseby, moved for a continuance on the ground that Margaret was ill and therefore unable to attend the trial at that time. The motion was denied and the defendant was allowed to reopen his direct examination of Joseph. This questioning consisted essentially of inquiries related to the value of Joseph's contribution to two homes owned by the parties in Fargo, North Dakota. The examination of witnesses was subsequently accomplished, and the trial was concluded that day.

Margaret then made a motion for a new trial. That motion was also denied. She now appeals from the order denying that motion.

It is her contention on appeal that because of a temporary incapacity, she was entitled to a continuance during the trial of the action and that the refusal of the district court to grant the requested continuance constituted an abuse of legal discretion in that she was denied the right to confront the witnesses appearing against her and was denied the right to effective assistance of counsel. She further contends that the court's actions constituted a denial of the due process of law as guaranteed by the Due Process Clause of Section 13 of the North Dakota Constitution and the Due Process Clauses of Article V and Article XIV of the Constitution of the United States.

The first issue before this court is whether the trial court abused its discretion in refusing to grant the continuance.

In response to that motion, the trial court made the following statement from the bench:

"THE COURT: Well, I should state that Mr. Huseby called me at about 8:15 this morning at my home and indicated that the mother of his client had been in touch with him and that she had advised Mr. Huseby that Mrs. Moll was sick and that she was suffering from chest pains and therefore would be unable to attend the session today.

"Mr. Huseby indicated he wanted a continuance and I told him that it was our policy here to require some medical evidence of illness before we would grant a request for continuance, and I suggested to him that we would wish to have either a certificate from a doctor or at least have a doctor call me, telling me that his client was unable to be present for health reasons.

"Mr. Huseby indicated to me that it might be difficult to get a doctor to make a house call but I suggested that he do the best he can.

\* \* \* \* \* \*

"THE COURT: May I finish, please? Mr. Huseby called me at 9:20 this morning here at the courthouse and said that he had talked to a Dr. Patterson from the Fargo Clinic and he informed me that the doctor had seen his client, Mrs. Moll, on the 12th of this month but had not seen her since and that Dr. Patterson further indicated that Mrs. Moll has been to see him and told him that she was concerned about this lawsuit and that he prescribed some kind of sedative for her. Mr. Huseby then indicated that Dr. Patterson was going to call me and discuss the matter with me.

"I again reiterated to Mr. Huseby what our requirements were and that we

would have to have some present medical evidence that she was unable to attend because of the state of her health. Mr. Huseby at that time told me that he was convinced his client would not come so I told him that without some medical evidence that we would proceed without her.

"At about 9:55 Dr. Patterson called me and he confirmed what Mr. Huseby had said that he had seen her on the 12th and prescribed some medication for nervousness. The doctor also indicated he had talked to Mrs. Holt, the mother of the plaintiff, this morning and that he didn't doubt that she was nervous and distraught, and I asked him if he had talked to Mrs. Moll and he said he had not. He also said that in his opinion the fact that this trial must be held sooner or later and that the nervousness which had simulated would never be resolved until it was tried, and it would be in the best interests to have it completed as soon as possible.

"Apparently he was unable to say that her health was such that she could not attend. Obviously he couldn't say that because he hasn't seen her. Apparently no effort was taken, no effort was made to take Mrs. Moll to the emergency room or we could have gotten the required medical confirmation of her illness, and as it stands now we only have secondhand information that she is unable to attend and none of it is of a suitable nature as far as the Court is concerned to merit a continuance.

"This is the time for the trial and I think we should proceed. The motion is denied. All right, Mr. Hansen."

■ We have said, as have many other appellate courts, that trial courts are clothed with a wide discretion in the matter of granting and denying motions for a continuance, and an order denying such a motion will be reversed on appeal only where it is shown that the trial court abused its discretion in ruling against the motion. In Re Smith's Estate, 69 N.D. 437, 288 N.W. 235 (1939); Madison Silos, Division of Mar-

tin Marietta Corp. v. Wassom, 215 N.W.2d 494 (Iowa 1974); Elm Creek State Bank v. Department of Banking, 191 Neb. 584, 216 N.W.2d 883 (1974).

■ In this case the basis of the motion was Mrs. Moll's alleged illness. As we said in In Re Smith, supra, the trial court must pass upon the question of whether or not the fact of illness is established and in passing upon this question, it may take into consideration not only the showings made by the parties at the time of the motion, but also such facts and circumstances in connection with the case as may have come to its knowledge during the course of the whole proceeding. The trial judge was in a much better position to properly assess the situation than we are on appeal.

As the trial judge indicated, no medical evidence of illness was presented to the court to substantiate the contention of Margaret's counsel that she was unable to attend the trial on March 19, 1974, because of illness.

Rule 6(f) of the Rules of Court for the District Courts of the State of North Dakota provides:

"(f) Continuances.

"(1) No cause noticed for trial shall be continued without the consent of the parties, except upon the affidavit of the party seeking the continuance or of some person who knows the facts upon which the application is founded. The affidavit shall contain the grounds for the continuance and if the continuance is sought because of the absence of a material witness, the affidavit must show that the party seeking the continuance has a meritorious claim or defense and has used reasonable diligence to prepare for trial, the nature and kind of diligence used, the names and residences of absent witnesses, and the substance of the testimony expected to be given by such witnesses. Unless otherwise permitted by the Judge, motions for continuance shall be made the first day of the term unless the

grounds therefor shall have arisen afterward."

Neither the oral declarations of illness made by Margaret's attorney nor the statements made by Dr. Patterson comply with this rule.

We think what the trial court said on October 15, 1974, at the time of the hearing of the motion for new trial is also significant.

"THE COURT: The Court has reviewed the transcript of the proceedings held on the morning of March 19, 1974, at which time a continuance was requested. I want to now reaffirm the position taken by the Court at that time, and to endorse the statements made in support of the Court's position as found at Pages 170, 171, 172 and 173 of the transcript.

"In reflecting on this matter, I am satisfied that the course taken under the circumstances was the proper one. It was not an abuse of discretion or unreasonable in any way to require a simple oral statement from a doctor confirming an illness of the plaintiff's, severe enough to prevent her attendance at court.

"As I saw it then, and as I still view it, I had a responsibility to see that the time of the Court, of court personnel, attorneys, and witnesses was not imposed upon except for good and sufficient cause.

"As I have indicated, a phone call stating plaintiff was incapacitated would have sufficed. If a doctor could not or would not go to the plaintiff, then certainly, as has been pointed out in argument this morning, she could have gone to see a doctor at any one of three emergency rooms that operate on a 24-hour basis in the City of Fargo and Moorhead.

"On March 19, 1974, I was presented with no medical evidence of illness. I have yet to be presented with such evidence. It seems to me that if the plaintiff was as ill as was contended that she certainly would have sought the services of a physician. If it was an illness that so prostrated her that she was unable to attend court, then it follows that it was an illness that would require medical attention. If she did see a doctor, then where is the report of such a visit? Where is the doctor's statement that he saw her that day and confirmed the fact that she was as ill as represented? Under the circumstances, I think that there is ample justification for a conclusion that the plaintiff was not as severely incapacitated as we are asked to believe.

"One other thing, the record in this case is replete with undisputed evidence of the plaintiff's drinking vice. It was a record before the Court that I think required the Court to approach any sudden request for a continuance with some caution, in order that the functioning of the Court not be hindered or imposed upon by that admitted and confirmed vice.

"I do not believe that there was an abuse of discretion and the motion for new trial is denied."

It is obvious from this statement that the court carefully considered both the motion for continuance and the motion for new trial and that something less than what the rule required would have been acceptable to the trial court.

Margaret insists that her presence was essential and that had she been present, she would have been able to successfully rebut her husband's testimony relative to the value of his contribution in labor and material in the improvement of the houses owned by the parties. The trial court could have considered, however, that at the time her deposition was taken on March 14, 1974, she stated she did not know how much money her husband had contributed in improving the house and that while she stated on cross-examination at the trial that she then knew the amount of that contribution, the same was not pursued by her counsel.

Margaret urges that parties have a right to be present at the trial of a civil action, and that the trial of this case in her absence was therefore improper.

In Jordan v. Butler, which has been cited by both parties, the Supreme Court of Nebraska said:

"A party to a civil action ordinarily has a right to be present at the trial, but his inability to be present does not necessarily warrant a continuance of the trial. The trial judge has a very wide measure of discretion when ruling on an application for a continuance. * * * A grant of a continuance because of the illness of a defendant is not necessarily required. * * *" 182 Neb. 626, 156 N.W.2d 778, 782 (1968).

Applying that rule, we find no abuse of discretion in denying the motion for continuance in this case.

We also conclude that the denial of the motion did not result in a denial of due process under the Constitution of the State of North Dakota or under the Constitution of the United States.

■ The second issue raised by the appellant is whether the trial court abused its discretion in denying her motion for a new trial. Since this motion was based upon the trial court's failure to grant the motion for the continuance, for the reasons given for affirming the trial court in that matter and for the additional reason that no affidavit was filed with the trial court at the time of the motion for new trial setting forth in detail what Margaret, as movant, would have specifically testified to had she been present in rebuttal (so that the trial court could have weighed the importance of her testimony); we conclude that the record does not disclose that the trial court abused its discretion in denying the motion for new trial.

For the reasons stated in this opinion, the order denying the motion for a new trial is affirmed.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.