Connie A. STECKLER, Applicant and Appellee,

v.

Bernard P. STECKLER, Respondent and Appellant.

Civ. No. 920099.

Supreme Court of North Dakota.

Nov. 5, 1992.

---

Eugene F. Buresh of Freed, Dynes, Reichert, Buresh & Herauf, P.C., Dickinson, for applicant and appellee.

Vince H. Ficek of Ficek Law Office, Dickinson, for respondent and appellant.

VANDE WALLE, Justice.

Bernard P. Steckler appealed from a protection order entered by the district court upon the application of Connie A. Steckler,

Bernard's former spouse. Bernard contests the procedure followed in entering the order as well as the evidentiary basis for the order. We affirm.

Connie and Bernard were divorced in 1985. The divorce decree gave the care, custody, and control of their two minor children to Connie and granted Bernard reasonable visitation with advance notice. Since the decree, there has existed an extensive history of visitation violations and allegations of abuse which are too extensive to detail in this opinion.

On February 21, 1992, Connie petitioned the Stark County District Court to issue an ex parte temporary protection order against Bernard. Connie's petition included an affidavit recounting an incident on October 31, 1991, at which time Connie was allegedly assaulted by Bernard. Connie further alleged that since the October 31, 1992 incident, Bernard continued to verbally harass her in person and by telephone, as well as make threats to her family and friends.

Relying on these allegations, the district court issued an ex parte temporary order which restrained Bernard from threatening, harassing, molesting, or injuring either Connie or her children. The order also provided that Bernard's visitation rights were to continue as specified in their 1985 divorce decree, except that the children were to be picked up and delivered by him at the home of Bernard's parents instead of Connie's home, where the children resided. A hearing was set for March 4, 1992, to determine whether a continued protection order would be required and, if so, for what duration.

On March 3, 1992, Bernard filed and served an affidavit and a resistance to the application and ex parte order. These documents provided a history of the relations between Connie and Bernard which implicated Connie as the cause of their discordant confrontations.

On March 4, 1992, a hearing was held at 12:03 p.m. in Stark County District Court. Both Connie and Bernard waived their right to present testimony. After the trial judge read the filed documents of both parties and heard a short recitation of what both parties requested, the trial judge voiced his intention to grant Connie's petition in its entirety. At that point, Bernard orally moved for a continuance to allow him to present testimony. Bernard's request was denied and the hearing was concluded at 12:11 p.m.—nine minutes after it commenced. A permanent protection order was entered on March 11, 1992.

On appeal, Bernard contends (1) that the court did not follow proper procedure in granting the order as it refused his motion for a continuance to present testimony, (2) that there was inadequate evidence presented to justify the entry of the protection order as there had been no showing of domestic abuse or actual or imminent danger to Connie, (3) that the incorrect standard of proof was utilized by the trial judge in granting the protection order, and (4) that the order unlawfully modified his visitation rights as granted to him by the 1985 divorce decree.

## I. Denial of the Motion for a Continuance

■ Section 14–07.1–02, NDCC provides that after "due notice and full hearing," the court may enter a protection order if there is a showing of "actual or imminent domestic violence." But, at the beginning of the March 4, 1992 hearing, both Connie and Bernard stated that they did not wish to present testimony. Thus they waived their right to present testimony. This right is waivable. NDCC §§ 1–02–28,[1] 31–

1. Section 1–02–28, NDCC reads: "Except when it is declared otherwise, the provisions of this code in respect to the rights and obligations of parties to contract are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts. The benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy." Waiver under this statute has been interpreted to allow a waiver of all rights and privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution. *Brunsoman v. Scarlett,* 465 N.W.2d 162 (N.D.1991); *Wellens v. Beck,* 103 N.W.2d 281 (N.D.1960). Note that

11–05(4).[2]

For a waiver to be effective, it must be a voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim or privilege which, except for such waiver, the party would have enjoyed. *Production Credit Ass'n v. Henderson*, 429 N.W.2d 421 (N.D. 1988); *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D.1974). Once the right is effectively waived, the right cannot later be reclaimed for "if waived, his right is gone forever and cannot be recalled." *Meyer v. National Fire Ins. Co. of Hartford, Conn.*, 67 N.D. 77, 269 N.W. 845, 852 (1936); 92 C.J.S. *Waiver*, p. 1068–69 (1955) ["It is generally recognized that, if a person in possession of any right waives that right, he will be precluded thereafter from asserting it or from claiming anything by reason of it ... the waiver cannot be retracted, recalled, or expunged."] [footnotes omitted].

In this case, Bernard effectively waived his right to present testimony at the hearing, for no issue is raised that it was made involuntarily, unintentionally, or without knowledge of the existence of the right. The right was waived, and Bernard cannot try to reclaim it as a matter of right.

Once a right is waived at a court proceeding, the trial court can reinstate that right should it choose. Here, Bernard moved for a continuance to present testimony, thereby asking the court to reinstate his right to present testimony in the protection order proceeding. The trial court denied this motion and we are asked to consider the merits of its denial. Our standard in reviewing a court's disposition on a motion for a continuance has been stated by this Court:

"A party's request for a continuance is a matter within the trial court's discretion, and we will not on appeal overturn its decision absent an abuse of discretion.

*Matter of Bo*, 365 N.W.2d 847, 852 (N.D. 1985). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *E.g., Ward v. Shipp*, 340 N.W.2d 14, 17 (N.D. 1983)."

*Construction Assoc. v. Fargo Water Equip.*, 446 N.W.2d 237, 239 (N.D.1989). This standard reflects the view that the lower courts have wide discretion on matters relating to the general conduct of proceedings in their court, which includes the granting or the denying of motions. *Great Plains Supply Co. v. Erickson*, 398 N.W.2d 732 (N.D.1986); *Moll v. Moll*, 231 N.W.2d 769 (N.D.1975). However, a court's discretion must be exercised in a manner which comports with substantial justice because a "trial is a search for truth." *Ward, supra*, at 18.

Allowing evidence to be entered after a party has rested is within the trial court's sound discretion. *See Tom Beuchler Const. v. City of Williston*, 392 N.W.2d 403 (N.D.1986) [trial court did not act unreasonably, arbitrarily, or unconscionably when, on its own initiative, ordered a supplemental hearing to take additional testimony]; *cf. Great Plains Supply Co. v. Erickson*, 398 N.W.2d 732 (N.D.1986) [trial court did not abuse its discretion when, at trial, it granted a party's motion for leave to take an additional deposition]; *Leno v. Ehli*, 339 N.W.2d 92 (N.D.1983) [not clearly erroneous for a trial court to reopen the case for clarification of the record].

Conversely, a court's refusal to reopen a case for testimony or grant a continuance after the court has announced its decision in the case, after the close of evidence, or after intentional refusal to offer testimony is not an abuse of discretion. Thus, when a moving party has had adequate opportunity to present testimony but deliberately fails to do so, the court's refusal to grant the continuance or reopen the

one is not able to waive a right in certain instances where public policy forbids it, *Meyer v. National Fire Ins. Co. of Hartford, Conn.*, 67 N.D. 77, 269 N.W. 845 (1936), or where a statutory provision declares or implies that it may not be waived. *Brunsoman, supra.*

2. Section 31–11–05(4), NDCC reads: "Anyone may waive the advantage of a law intended solely for his benefit, but a law established for public reasons cannot be contravened by a private agreement."

case is viewed as well within the court's discretion. *See Foerster v. Fischbach–Moore, Inc.,* 178 N.W.2d 258 (N.D.1970) [reopening case after parties rest is a matter within court's sound discretion]; *Kuntz v. Stelmachuk,* 136 N.W.2d 810 (N.D.1965) [if there is a deliberate decision of a party to not call a known witness during trial, denial of motion to reopen case for that testimony after parties rest is not reversible error]; *Swanson v. Fort Worth Transit Co.,* 209 S.W.2d 772 (Tex.Civ.App.1948) [refusal to reopen case after testimony closed was not an abuse of discretion where there had been an agreement by both parties in open court that no testimony except depositions would be offered].

Bernard waived his right to present testimony, and after the trial court indicated its decision, he moved for a continuance. The trial judge denied the motion. As the cases illustrate, the trial court is granted great latitude in denying or granting a motion for a continuance. This discretion, exercised in light of (1) Bernard deliberately deciding not to present testimony, (2) Bernard not moving for a continuance until after the court indicated its decision, and (3) the extensive affidavits and briefs giving the trial judge sufficient bases upon which to decide the case, thereby making an extension for the purpose of admitting evidence unnecessary, all support the trial judge's denial of the motion. We are not left with the impression that the trial judge abused his discretion by acting in an arbitrary, unreasonable, or unconscionable manner in denying the motion.

### II. Sufficiency of the Evidence and Correct Standard of Proof

A proceeding under the "Adult Abuse" statutes is labeled "an action for a protection order." NDCC § 14-07.1-02(1). Section 32-01-02, NDCC defines "action" as a proceeding "by which a party prosecutes another party for the enforcement or protection of a right. . . ." The burden of proof or persuasion as to an issue or an element of a party's cause of action generally rests on that party. *Midland Oil & Royalty Co. v. Schuler,* 126 N.W.2d 149 (N.D.1964).

A domestic violence protection order under North Dakota's "Adult Abuse" statutes is a civil action primarily for injunctive relief. In civil actions, the party who has the burden of proof must establish the essential elements of the claim by a preponderance of the evidence. *Bismarck Baptist Church v. Wiedemann Indus., Inc.,* 201 N.W.2d 434 (N.D.1972); *Benzmiller v. Swanson,* 117 N.W.2d 281 (N.D. 1962). *See also Federal Land Bank of Omaha v. Swanson,* 231 Neb. 868, 438 N.W.2d 765 (1989) [a party seeking an injunction must do so by a preponderance of the evidence]; *Brookings Mall, Inc. v. Cpt. Ahab's, Ltd.,* 300 N.W.2d 259 (S.D.1980) [an injunction will be granted if the elements thereof are proven by a preponderance of the evidence]. Therefore, Connie, as the party requesting the order, had the burden of proving "a showing of actual or imminent domestic violence" by a preponderance of the evidence. NDCC § 14-07.1-02(4).

"Domestic violence" as defined in section 14-07.1-01(2), NDCC includes "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault, not committed in self-defense, on the complaining family or household members."

"Domestic violence" must be shown as being "actual" or "imminent." NDCC § 14-07.1-02(4). We have previously defined "imminent" as meaning "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." *State v. Kurle,* 390 N.W.2d 48 (N.D.1986) *citing Black's Law Dictionary* 676 (5th ed.1976). We have also cited with approval a Tennessee Court of Appeals definition that "[i]mminent means close in point of time, but closeness is likewise a term of many degrees, according to the circumstances." *Kurle, supra,* [citing *State Dept. of Hum. Serv. v. Northern,* 563 S.W.2d 197 (Tenn.Ct.App.), *appeal dismissed as moot,* 436 U.S. 923, 98 S.Ct. 2816, 56 L.Ed.2d 767 (1978).]

"Actual" has been defined as "[r]eal; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible." *Black's Law Dictionary* 34 (6th ed. (1990)). The New York courts have defined "actual" as "something real as opposed to constructive or speculative: something existing in act, fact, or reality." *Guarisco v. Massachusetts Bonding & Ins. Co.,* 167 Misc. 875, 4 N.Y.S.2d 788, 792 (N.Y.City Ct.1938).

In showing by a preponderance of the evidence the existence of "actual or imminent domestic violence," Connie submitted her application for the ex parte order which set forth an alleged incident of both physical and verbal abuse that occurred on October 31, 1991. Not only did this incident qualify as "domestic abuse," as it was an "assault" and "inflicted fear," NDCC § 14–07.1–01(2); but it was also "actual," NDCC § 14–07.1–02(4), as it was "real and substantial," *Guarisco, supra.* Bernard attempted to counter Connie's accusation by submitting an affidavit which implied that he was not the cause of the alleged incident. Although both parties waived their right to present testimony at the hearing, the judge considered the evidence presented and was able to weigh both parties' version of the incident. The trial court had before it the affidavits and applications of both parties on which to ground its order, and it made an informed decision and ruled upon the evidence presented.

 Bernard contends that the October 31, 1991 incident was too remote in time to justify Connie's petition on February 21, 1992. But in parental termination cases, we have held that a court need not await the happening of a tragic event before it takes action to terminate those parental rights. *McBeth v. J.J.H.,* 343 N.W.2d 355 (N.D.1984). We have also cited with approval decisions holding that evidence of previous abuse and deprivation may be considered in determining whether deprivation is likely to continue and that the children will probably suffer therefrom. *In Interest of J.A.,* 283 N.W.2d 83 (N.D. 1979). That rationale is applicable in cases

alleging domestic violence as past actions act as relevant and pragmatic evidence in assisting the court's determination of whether domestic violence is actual or imminent. Where as here there exists a history of visitation violations and allegations of abuse, the court may consider what happened in October 1991 as relevant evidence of what might occur in the future. It need not await a more tragic event to take action. The remoteness of the October 1991 incident is a matter for the court to consider in weighing the evidence before it.

The question of whether or not there was "domestic violence" directed against Connie is an issue of fact to be determined by the trier of fact. It is reviewable by this Court and will be overturned only if clearly erroneous. Rule 52(a), NDRCivP; *Lucke v. Lucke,* 300 N.W.2d 231 (N.D.1980). We are not left with the belief that the trial court's disposition was clearly erroneous.

### III. Visitation Rights

 The 1985 divorce decree granted Bernard certain visitation rights whereby Bernard would give Connie 24 hours advance notice of his request for visitation. By the divorce decree, Connie was to have the children ready, and Bernard was to pick up and deliver the children at Connie's house where they resided. Through the granting of the protection order on March 11, 1992, Bernard contends that his visitation rights are severely restricted as he would be unable to contact Connie directly to arrange visitation and would have to go through a third party (his parents) to pick up and deliver the children. He contends this amounts to an impermissible modification of the divorce decree.

The protection order does not restrict or lessen Bernard's divorce decree visitation rights. The trial court was careful to state the protection order was not to alter Bernard's visitation rights, except the pick-up and delivery points of the children. Bernard is entitled to no more or no less visitation time, and his access to the children is not more restrictive—especially in light of the new condition that the children be picked up and delivered at the house of

Bernard's own parents. The effect of the protection order does not modify the substance of the divorce decree.[3] In any event, the order is within the statutory authority given to the court to accomplish the objective of a protection order as set forth in section 14–07.1–02(4), NDCC.

The order of the district court is affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and JOHNSON, JJ., concur.

---

**3.** Although not in the context of an appeal from a domestic violence protection order, we have summarily affirmed an appeal pursuant to Rule 35.1, NDRCivP, of a court order changing the site the children were to be picked-up and delivered for visitation because the threat of abuse to the custodial parent. *See Anderson v. Svanes,* 485 N.W.2d 353 (N.D.1992).