Larry TERNES, Jr., Plaintiff
and Appellee,

v.

Bergetta TERNES, Defendant
and Appellant.

Civil No. 960121.

Supreme Court of North Dakota.

Nov. 13, 1996.

Rehearing Denied Dec. 4, 1996.

Lawrence R. Klemin of Bucklin, Klemin & McBride, Bismarck, for plaintiff and appellee. Karen L. McBride submitted on brief.

Leslie Bakken Oliver of Kapsner and Kapsner, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Bergetta Ternes appealed from the judgment awarding custody of her three children to their father, Larry Ternes. Bergetta argues the trial court did not properly consider evidence of domestic abuse, as required by N.D.C.C. § 14–09–06.2(1)(j). Because Bergetta failed to raise the issue at the trial court and because there is no adequate finding by the trial court whether or not domestic violence occurred, we affirm.

Bergetta and Larry Ternes were married in 1983 near Shields, North Dakota. At the time of marriage, Bergetta was seventeen years old and Larry was twenty-three. The couple had three children, Desiree, born June 21, 1984, Chantalle, born October 22, 1989, and Caitlin, born February 16, 1992. While married, the couple lived in Selfridge, North Dakota.

The marriage between Bergetta and Larry was difficult. During the course of the mar-

riage both parties engaged in extramarital affairs. Both Larry and Bergetta had bouts of alcohol abuse while married. There is no evidence of any physical abuse by either party exhibited toward each other or the children as a result of the affairs or drinking.

Bergetta first brought up the idea of divorce in September of 1994. She told Larry she was in love with another man and wanted a divorce. Bergetta claimed Larry was very upset, and four days later, attempted to commit suicide. Bergetta discovered him sitting in their van in the garage with the engine running. Larry testified he did stage a suicide attempt, but contended he never seriously thought about killing himself, but rather was trying to gain Bergetta's attention and sympathy. Bergetta contends this action placed her in fear and this caused her not to seek a divorce.

Shortly thereafter, Larry filed for divorce. An interim order was filed on September 27, 1994. The order granted physical custody to Larry, with visitation rights to Bergetta. The interim order also required Bergetta to pay $350.00 per month in child support. Furthermore, the order evicted Bergetta from the parties' house in Selfridge and enjoined both parties from interfering with each other. Bergetta moved to Mandan, where she currently resides with her partner, Patrick Becker.

During the effect of the interim order, the children lived with Larry in Selfridge. Bergetta's visitation rights gave her visitation with the children every weekend. Larry did not try to impinge on or hinder Bergetta's rights. However, Bergetta claimed Larry, prior to the weekend visits, would tell the children there was "a bad man" staying at their mother's house, as well as making other negative comments. Bergetta claimed these comments were directed at Becker and dem-

onstrated why the children "were expressing concern about coming to mom's house...."

Bergetta and Larry, despite their separation, both took Desiree, their oldest daughter who suffers from a chromosome defect, to a medical visit at the University of Minnesota Hospital in Minneapolis, in the fall of 1995.

The testimony of the event surrounding this trip is conflicting. During their time in Minneapolis, Bergetta and Larry stayed in different motels. However, on the last night, they, and Desiree, stayed in the same motel room. Bergetta claimed Larry asked if they could have sexual intercourse and tried to climb into the shower with her, but Larry denied ever making such a request. On the way home, Larry contended he was upset because Bergetta was wearing a Green Bay Packers shirt and claims Bergetta was wearing the shirt to purposely annoy him. Larry contended the Green Bay Packers were Patrick Becker's favorite football team and Bergetta's wearing the shirt was meant to anger Larry. Bergetta admitted to wearing the shirt, but denied it was intended to anger Larry. Despite the conflicting testimony, it is uncontroverted that, following an argument in front of Desiree, Larry left Bergetta at a rest area on Interstate 94 near Alexandria, Minnesota, and returned to Selfridge with Desiree.

The divorce action was brought before the trial court for final judgment in February of 1996. The trial court, in awarding custody, considered the relevant factors, under N.D.C.C. § 14–09–06.2, to determine the best interest of the Ternes children. Under this statute, the trial court applied factors a, b, c, and g [1] and found both parents were equally able to provide for the best interests of the children. The trial court stated, in its Memorandum Decision, that "both plaintiff and defendant have in the past, and in the future will, adequately parent the children." The

---

**1.** Under N.D.C.C. § 14–09–06.2(1), these factors provide:

\* \* \* \* \* \*

a. The love, affection, and other emotional ties existing between the parents and child.
b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

\* \* \* \* \* \*

g. The mental and physical health of the parents.

trial court further stated factors i, j, k, and l[2] were not applicable. Thus, the trial court considered, in detail, factors d, e, f, h, and m.[3]

Applying these factors, the court concluded the childrens' environment would be more desirable, both in facilities and continuity, with Larry rather than Bergetta. Furthermore, the court considered both parties' moral fitness questionable, but found Bergetta's extramarital affairs "more serious in degree and effect" and weighed factor "f" in Larry's favor. The trial court did consider Larry's behavior, including the staged suicide attempt, his behavior on the trip home from Minneapolis, and his comments to the children regarding Bergetta as "inappropriate," but also found "counseling has largely solved these problems. . . ." These were the only findings as to the actions Bergetta now claims constitute domestic violence. Finally, the trial court concluded that by "[p]lacing weight on plaintiff's advantage with regard to stability, his good performance as caretaker for the past one and one-half years, his successful counseling and the other factors . . . this Court finds an award of custody to plaintiff [Larry] to be in the best interest of the children."

Bergetta did not raise the issue of domestic violence at trial. However, because the trial court did not consider domestic violence as a factor, Bergetta now contends the trial court erred. She argues Larry's actions constitute domestic violence under the statute and raises the issue on appeal.

■ A trial court's custody determination is a finding of fact. *Helbling v. Helbling,* 532 N.W.2d 650 (N.D.1995) (citing *Leppert v. Leppert,* 519 N.W.2d 287, 290 (N.D.1994)). A custody determination will not be set aside unless it is clearly erroneous. N.D.R.Civ.P. 52(a). *Krank v. Krank* 529 N.W.2d 844, 847 (N.D.1995) (citing *Simons By and Through Simons v. Gisvold,* 519 N.W.2d 585, 587 (N.D.1994)). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, has a definite and firm conviction that the trial court has made a mistake." *Krank,* 529 N.W.2d at 847 (quoting *Ludwig v. Burchill,* 514 N.W.2d 674, 675 (N.D.1994)).

■ When determining custody, a trial court must consider what is in the best interest of the child. N.D.C.C. § 14–09–06.2, *supra* nn. 1–3. This statute was amended in 1993 to provide a rebuttable presumption against awarding custody to those parties who perpetrate domestic violence. *Heck v. Reed,* 529 N.W.2d 155, 161 (N.D.1995). This presumption can only be rebutted by clear and convincing evidence. *Id.* In the past, we stated each applicable factor of section 14–09–06.2 should be given equal consideration when determining the best interest of the child. *Swanston v. Swanston,* 502 N.W.2d 506, 508 (N.D.1993). However, since the amendment creating the rebuttable presumption, we have said that, "in the hierarchy of factors to be considered, domestic violence predominates when there is credible

---

**2.** N.D.C.C. § 14–09–06.2(1), for these factors, provides:

\* \* \* \* \* \*

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence . . . . (*see infra*)

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

**3.** N.D.C.C. § 14–09–06.2(1), for these factors provides:

\* \* \* \* \* \*

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

\* \* \* \* \* \*

h. The home, school, and community record of the child.

\* \* \* \* \* \*

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

evidence of it." *Ryan v. Flemming*, 533 N.W.2d 920, 923 (N.D.1995). *Heck*, 529 N.W.2d at 161–62; *Krank*, 529 N.W.2d at 848. As amended, § 14–09–06.2(1)(j) states:

"j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence...."

Bergetta conceded, on appeal, she did not directly raise the issue at the trial court level, and therefore, the trial court did not make any detailed findings regarding evidence of domestic violence, other than calling Larry's actions "inappropriate."

Several recent cases have come before us on the issue of the effect of domestic violence in custody determinations under this statute. *Anderson v. Hensrud*, 548 N.W.2d 410 (N.D. 1996); *Bruner v. Hager*, 547 N.W.2d 551 (N.D.1996); *Engh v. Jensen*, 547 N.W.2d 922 (N.D.1996); *Helbling*, 532 N.W.2d 650; *Krank*, 529 N.W.2d 844. In each of these cases, we have applied the statutory definition of domestic violence, which is incorporated by direct reference in section 14–09–06.2(1)(j) and which states: " 'Domestic violence' includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." N.D.C.C. § 14–07.1–01(2).

Bergetta contends the alleged suicide attempt, the sexual advances, and Larry's decision to leave her at the rest area in Minnesota constitute domestic violence and the trial court should have considered these actions in determining the best interest of the Ternes children.

We have no doubt these actions should be and were considered by the trial court in determining custody. The question arises whether Larry's conduct falls within the plain wording of the statute so as to constitute domestic violence as therein defined. Reprehensible as Larry's conduct may appear, it is not immediately apparent that it constitutes domestic violence as defined, so as to create the presumption against custody. Our difficulty in analyzing that conduct is compounded by the lack of adequate findings below. In the majority of the cases following *Heck v. Reed*, there was clear evidence demonstrating actions which rose to the level of domestic violence and thus triggered the presumption. *Bruner v. Hager II*, 547 N.W.2d at 552 (citing *Bruner v. Hager I*, 534 N.W.2d 825, 826–27 (N.D.1995)) (listing four instances of domestic violence, including, hitting in the face and ripping of clothing); *Owan v. Owan*, 541 N.W.2d 719, 720 (N.D.1996) (providing evidence of the husband slapping and throwing his wife up against walls); *Ryan*, 533 N.W.2d at 921 (providing evidence of the father breaking a potted plant and ripping the phone from wall); *Helbling*, 532 N.W.2d at 651 (citing evidence of kicking and whipping); *Krank*, 529 N.W.2d at 846 (listing instances of domestic violence perpetrated by both parties, including parties breaking each others bones, throwing ashtrays, and even a gunshot).

Here, largely because the issue was not raised at trial, it is unclear whether Larry's actions amounted to domestic violence so as to trigger the presumption, or were actions which certainly should have been weighed against his receiving custody, but would not trigger the domestic violence presumption. Thus, we are asked to decide the issue more in the context of an original action than an appeal.

Because it is far from clear Larry's actions constitute domestic violence under the statute and because of the fact Bergetta did not attempt to raise the presumption of domestic violence at trial, we will not consider whether

Larry's actions were or were not domestic violence. We cannot determine if the trial court's actions were clearly erroneous under N.D.R.Civ.P. 52(a), and we will not try the case on appeal.

 Although Bergetta did not raise the issue of domestic violence to the trial court, this does not mean trial judges are free to ignore evidence which clearly reveals domestic violence merely because the parties do not explicitly label the action as such. When there is clear evidence of domestic abuse, the trial courts must address this issue. As we said in *Krank*, "[w]hen there is credible evidence of domestic violence ... findings that ambiguously allude to the issue are insufficient to support a custody award. Rather, the trial court must make detailed findings on the domestic violence issue." 529 N.W.2d at 850. However, when the evidence does not demonstrate a clear showing of domestic violence, as statutorily defined, but rather, demonstrates a showing of actions which may or may not be within the domestic violence definition, the party attempting to raise the presumption must do so at the trial court level, and not wait to raise the issue when the case is on appeal. Although we do not decide today whether the actions here are, or are not, domestic violence, trial judges should consider similar behavior in determining the best interest of a child in a custody dispute.

Because the issue of domestic violence was not raised at the trial court level, the trial court's findings awarding Larry custody were not clearly erroneous. Therefore, we affirm.

MESCHKE, MARING and NEUMANN, JJ., concur.

SANDSTROM, J., concurs in the result.