1997 ND 201

Gail Marie LOVCIK, f/k/a Gail Marie Ellingson, Plaintiff and Appellee,

v.

Gregory Dean ELLINGSON, Defendant and Appellant.

Civil No. 960366

Supreme Court of North Dakota.

Oct. 21, 1997.

Rehearing Denied Nov. 6, 1997.

Neil W. Fleming (argued), of Fleming & DuBois, Cavalier, for defendant and appellant.

Barbara Whelan (argued), of Tisdale & Whelan, Grafton, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Gregory Dean Ellingson appeals a permanent domestic violence protection order which restrains him from contact with Gail Marie Lovcik and limits him to supervised visitation with their children for eighteen months. We conclude the trial court did not err and affirm the protection order.

[¶ 2] Gail Lovcik and Greg Ellingson, formerly husband and wife, were divorced in June of 1991. Gail and Greg are the natural parents of two sons, aged 9 and 8. Gail has physical custody of the children pursuant to the divorce decree, and they reside with her in Park River.

[¶ 3] A previous protection order was entered against Greg by the trial court in 1989. The 1989 protection order was the result of violent acts committed by Greg against Gail. These acts included pushing Gail against a wall, choking her while she was holding one of the children, pushing her down to the ground, and getting on top of her. Greg was subsequently twice criminally convicted of violating that protection order.

[¶ 4] On September 3, 1996, a hearing initiated by Gail was held before the trial court to consider a modification and substantial increase in Greg's child support obligation. After the hearing, both returned to the Park River area. Anticipating an adverse ruling from the court, Greg became upset and angry and began to call Gail's home that evening around 8:00 p.m.

[¶ 5] The younger son answered the first phone call, and Gail's answering machine recorded the ensuing conversation. During this conversation, Greg told his son he would have to sell his son's grandparents' house due to Gail's court action. Greg also stated that he was very, very mad at Gail. Shortly thereafter, there was a second call from Greg which the older son answered. Although Gail did not hear the contents of this call, the older son began to cry and would not talk with Gail about the contents of the call.

[¶ 6] Later that evening, Greg made a third phone call which Gail answered. In this call, Greg was angry and verbally harassed Gail using derogatory terms, including referring to her as a "bitch," "a fucking liar" and a "cunt." Gail testified she put down the phone and walked away because she was scared and intimidated by the call. She eventually returned to the phone to hang it up. Later that same evening, Greg called a fourth time, and Gail answered. Although Greg was more calm during this conversation, he made more harassing and verbally abusive statements to Gail. During a fifth phone call from Greg that evening, Greg referred to Gail as a "lying bitch."

[¶ 7] In addition to these phone calls, Greg left two messages that evening on Gail's answering machine. In the first recorded message which was addressed to his sons, Greg referred to Gail as a "materialistic welfare victim bitch" and a "cunt." Greg addressed the second recorded message to both Gail and his sons. Greg was again verbally abusive and stated, "Hope you really enjoy your money and you fucking choke on it, Gail."

[¶ 8] Gail testified she feared for her safety as a result of these phone calls from Greg on September 3, 1996. She immediately locked all of the doors and windows. She also called the police and requested they provide an extra patrol by her residence that evening. Gail testified she experienced nausea and shaking as a result of her fear, and the boys were distraught and confused by the evening's events.

[¶ 9] Greg does not dispute that he left the messages on Gail's machine nor that he intended Gail to hear the messages. On November 18, 1996, the trial court granted Gail's application for a permanent protection order for a period of eighteen months restraining Greg from any contact with Gail and their children, except for exercising supervised visitation with the boys. Greg appeals the order of the trial court claiming the court erred in finding Greg's actions constituted domestic violence because Greg's actions do not constitute domestic violence as defined by the statute, there was insufficient evidence to prove domestic violence, and the court abused its discretion by considering past incidents of domestic violence.

[¶ 10] Whether there was "domestic violence" is an issue of fact determined by the trier of fact. *Steckler v. Steckler,* 492 N.W.2d 76, 81 (N.D.1992). A finding of fact is reviewable on appeal and will be overturned only if it is clearly erroneous. N.D.R.Civ.P. 52(a); *Sandbeck v. Rockwell,* 524 N.W.2d 846, 851 (N.D.1994); *Steckler,* 492 N.W.2d at 81. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, the reviewing court is left with a definite and firm conviction a mistake has been made. *Mahoney v. Mahoney,* 538 N.W.2d 189, 192 (N.D.1995).

[¶ 11] A domestic violence protection order is a civil action primarily for injunctive relief. *Steckler,* 492 N.W.2d at 80. A trial court may enter a protection order "[u]pon a showing of actual or imminent domestic violence" under N.D.C.C. § 14–07.1–02(4), the domestic violence statute. The party seeking the protective order must prove actual or imminent domestic violence by a preponderance of the evidence. *Sandbeck,* 524 N.W.2d

at 851 (citing *Brandt v. Brandt,* 523 N.W.2d 264, 265 (N.D.1994)). "Domestic violence" is statutorily defined to include "the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault . . . on the complaining family or household members." N.D.C.C. § 14–07.1–01(2).

[¶ 12] Greg argues his conduct, while admittedly reprehensible, was not "domestic violence," as defined by the statute. Greg argues the conduct in *Ternes v. Ternes,* 555 N.W.2d 355 (N.D.1996), was also reprehensible but was held not to be domestic violence. That, however, is not what we said. In *Ternes,* we did not determine whether the actions alleged constituted domestic violence because the issue was not raised at trial and, therefore, there was a lack of adequate findings by the trial court. 555 N.W.2d at 358–59. In this case, unlike *Ternes,* the trial court made very specific findings on the issue of domestic violence. The trial court specifically found Gail was placed in fear for her safety as a result of Greg's September 3, 1996, phone calls and verbal statements which were directed at Gail or which she heard. The evidence in the record was that Gail immediately locked all the doors and windows of her home the evening she received the calls, called the police, and requested they provide extra patrol by her residence. There was evidence Gail immediately became nauseated and shook from fear.

[¶ 13] The trial court also specifically found Gail's fear for her safety was reasonable because of her past experience with Greg and Greg's past conduct toward Gail which had been verbally abusive, physically violent, and threatening. Based on these findings, the trial court concluded Greg's conduct was "domestic violence."

[¶ 14] The clearly erroneous rule properly limits our standard of review because the trial court is in a much better position to determine the facts. *Buzick v. Buzick,* 542 N.W.2d 756, 758 (N.D.1996). The trial court has the opportunity to observe the demeanor and credibility of the witnesses, while the appellate court must rely on the cold record. *Id.* When reason-

able evidence in the record supports the findings made by the trial court, we will not retry the case. *Id.* We have reviewed the entire record, and we are not left with a definite and firm conviction a mistake was made by the trial court. We conclude the trial court's findings of fact are not clearly erroneous.

[¶ 15] Greg next argues the trial court erred by not requiring expert testimony to prove Greg's actions caused Gail's mental and emotional distress. Whenever specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, expert testimony is admissible. N.D.R.Ev. 702; *Kluck v. Kluck,* 1997 ND 41, ¶ 7, 561 N.W.2d 263. Whether expert testimony is useful, however, falls within the trial court's sound discretion and will not be overturned on appeal absent an abuse of that discretion. *Kluck,* 1997 ND 41, ¶ 7, 561 N.W.2d 263; *State v. Trosen,* 547 N.W.2d 735, 739 (N.D.1996). "A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process." *Anderson v. A.P.I. Co. of Minnesota,* 1997 ND 6, ¶ 18, 559 N.W.2d 204. We conclude on the record before us the trial court did not abuse its discretion by not requiring the testimony of an expert.

[¶ 16] Finally, Greg argues the trial court erred by considering past incidents of domestic violence in issuing the present permanent protection order. Although past abusive behavior is not dispositive, it is relevant in determining whether domestic violence is actual or imminent. We have stated:

> Where . . . there exists a history of visitation violations and allegations of abuse, the court may consider what happened [previously] as relevant evidence of what might occur in the future. It need not await a more tragic event to take action. The remoteness of the [previous] incident is a matter for the court to consider in weighing the evidence before it.

*Steckler,* 492 N.W.2d at 81. We conclude the evidence of previous domestic violence was relevant and properly considered by the trial court.

[¶ 17] We affirm the domestic violence protection order of the trial court.

[¶ 18] VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

SANDSTROM, Justice, concurring.

I concur in the result only, because of the majority's needless inclusion of the crudest obscenities.