2006 ND 165

**Krista M. FRISK, Petitioner
and Appellee**

v.

**Daniel J. FRISK, Respondent
and Appellant.**

No. 20050391.

Supreme Court of North Dakota.

July 21, 2006.

Carrie Lynn Francis (argued), Edward B. Reinhardt, Jr. (on brief), and James Patrick Fitzsimmons (appeared), Legal Services of N.D., Minot, N.D.; for petitioner and appellee.

Steven M. Light (argued) and Lorelle Ann Moeckel (appeared), Larivee & Light, Bank of the West Tower, Fargo, N.D., for respondent and appellant.

KAPSNER, Justice.

[¶ 1] Daniel Frisk appeals from an amended domestic violence protection order entered against him. We conclude the district court made sufficient findings of actual or imminent domestic violence to support the amended order, and we affirm.

I

[¶ 2] Daniel and Krista Frisk separated on May 9, 2004. Following the separation, Krista Frisk filed a petition for protective relief, and the district court issued a temporary domestic violence protection order. The parties submitted affidavits, and on June 3, 2004, an evidentiary hearing was held, but before the conclusion of the hearing the parties agreed to a continuation of the temporary protection order for a period of six months or until further order of the court. The agreement specifically stated there would be no findings on domestic violence.

[¶ 3] On November 10, 2004, Krista Frisk applied for an extension of the protection order. The parties submitted affidavits, and on December 15, 2004, an evidentiary hearing was held. The district court subsequently granted the extension for a period of two years. Daniel Frisk appealed the district court's order. On appeal, we reversed the protection order and remanded to the district court for consideration of whether the evidence supported a finding that Daniel Frisk poses an "actual or imminent" danger of domestic violence to Krista Frisk. *Frisk v. Frisk*, 2005 ND 154, ¶ 14, 703 N.W.2d 341.

[¶ 4] On remand, the district court held a hearing on October 15, 2005, to determine whether it needed new evidence to proceed or whether it could make a finding of domestic violence based upon the evidence already presented. The court concluded it could proceed using the previously presented evidence and found there was an actual or imminent danger of domestic violence. The court entered an amended protection order extending the stipulated order until December 15, 2006.

II

[¶ 5] " 'Whether there is domestic violence sufficient to support the issuance of a protection order is a question of fact which will be overturned on appeal only if it is clearly erroneous. However, a trial court's decision to extend an existing protection order is reviewed under an abuse of discretion standard.' " *Frisk*, 2005 ND 154, ¶ 6, 703 N.W.2d 341 (quoting *Gaab v. Ochsner*, 2001 ND 195, ¶ 6, 636 N.W.2d 669).

III

[¶ 6] Daniel Frisk argues N.D.C.C. § 14–07.1–02, the statute governing issuance of domestic violence protection orders, only allows the court to "amend" an existing protection order, and he claims the meaning of the word "amend" does not include extend. He argues the district

court erred in extending the stipulated protection order because the stipulated order expired before it was extended. He also claims a stipulated order cannot procedurally be extended beyond its agreed upon time limit, and Krista Frisk must apply for a new protection order relying on entirely new evidence.

### A

■ [¶ 7] Section 14–07.1–02, N.D.C.C., sets out the procedure for issuing a domestic violence protection order. Section 14–07.1–02(6), N.D.C.C., states, "[t]he court may amend its order or agreement at any time upon subsequent petition filed by either party." Section 14–07.1–02, N.D.C.C., is a remedial statute "which we construe 'liberally, with a view to effecting its objects and to promoting justice.'" *Gaab*, 2001 ND 195, ¶ 5, 636 N.W.2d 669 (quoting *Lucke v. Lucke*, 300 N.W.2d 231, 234 (N.D.1980)). The purpose of the statute is to protect victims of domestic violence from further harm. *Gaab*, at ¶ 5. In *Gaab*, we considered the language of the statute and its legislative history, and held that N.D.C.C. § 14–07.1–02 allows for the extension of a permanent domestic violence protection order without a finding of actual or imminent domestic violence, if there was a previous finding of actual or imminent domestic violence. *Id.*

■ [¶ 8] Although N.D.C.C. § 14–07.1–02 does not specifically state that a protection order may be extended, it does provide that the court's order or agreement may be amended at any time upon the request of either party. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. When we interpret a statute, "'our duty is to ascertain the Legislature's intent, which

initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning.'" *GO Comm. v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865 (quoting *Larson v. Larson*, 2005 ND 67, ¶ 8, 694 N.W.2d 13). The ordinary meaning of "amend" means to improve, change, correct, or revise. *Black's Law Dictionary* 81 (6th ed.1990). "Extend" has a variety of meanings, including "to expand, enlarge, prolong, lengthen, widen, carry or draw out further than the original limit." *Black's Law Dictionary* 583 (6th ed.1990). Construing N.D.C.C. § 14–07.1–02(6) liberally to effectuate its purpose, we interpret the word "amend" to include a change that extends the terms of a stipulated protection order. Our interpretation is consistent with *Gaab* and provides domestic violence victims with continued protection from further harm, and therefore effectuates the purpose of the statute.

### B

■ [¶ 9] Daniel Frisk argues that even if the stipulated order could be extended, it was extended after it had expired and therefore could no longer be extended. He claims it is not enough for an individual to apply for an extension before the expiration of the protection order; instead the court must actually extend the protection order before the expiration. He urges this Court to look to Minnesota and Ohio law for guidance, citing Minn.Stat. § 518B.01, subd. 6a, and Ohio Rev.Code Ann. § 3113.31(E)(3)(c).

[¶ 10] Daniel Frisk's reliance on the Minnesota and Ohio statutes is misplaced. Subdivision 6a, Minn.Stat. § 518B.01, states, "[u]pon application, notice to all parties, and hearing, the court may extend the relief granted in an existing order for protection or, if a petitioner's order for protection is no longer in effect when an

application for subsequent relief is made, grant a new order." The plain language of the statute allows for an extension of the original protection order if an application for extension is made before the order expires and requires a new order only if the original order is no longer in effect when an application for extension is made.

[¶ 11] The Ohio statute states, "[a]ny protection order issued or consent agreement approved pursuant to this section may be renewed in the same manner as the original order or agreement was issued or approved." Ohio Rev.Code Ann. § 3113.31(E)(3)(c). The statute does not state that a renewal must occur before an original order expires. Daniel Frisk cites *Felton v. Felton*, 1997 Ohio 302, 79 Ohio St.3d 34, 679 N.E.2d 672, in support of his claim, but his reliance on that case is also misplaced. The two issues before the court in *Felton* were whether a court may issue a domestic protection order when the parties agreed, as part of the divorce decree, to not harass each other; and the burden of proof for issuing a protection order. *Id.* at ¶ 1, 679 N.E.2d 672. Renewal of a protection order was mentioned only in passing, and was not an issue in the case. In listing the benefits of a protection order versus a harassment provision of a divorce decree, the court said, "the overwhelming benefits to the victim of domestic violence that the protection order offers far outweigh any concerns about the temporary nature of the protection order, which can be renewed at the end of the effective period." *Id.* at ¶ 4, 679 N.E.2d 672. The court's language does not support Daniel Frisk's claim; the court said the order may be renewed at the end of the effective period, not that it must be renewed before the end of the effective period.

[¶ 12] A logical extension of Daniel Frisk's argument would require petitioners to apply for an extension of a protection order as soon as the original protection order was issued to ensure the court would have sufficient time to amend the order. We construe statutes to avoid ludicrous results and idle acts, *see County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321 (N.D.1985), and we decline to construe N.D.C.C. § 14–07.1–02 to encourage that practice. Encouraging parties to apply for an extension as soon as the original order is issued fails to give the parties time to see if an extension is necessary. The purpose of the protection order is to protect domestic violence victims from further harm, and that purpose may be accomplished by giving the parties time to calm down and put some distance between them. The purpose of the statute is best promoted if a petitioner is only required to apply for an extension before the original order expires, and not to require the court to enter the amended order before the expiration.

[¶ 13] We conclude a protection order may be amended if the petitioner requests the amendment before the original protection order expires, whether or not the court actually enters the amended order before the expiration of the original order. In this case, Krista Frisk applied for an extension of the stipulated protection order a month before the order expired, and we conclude her application was timely.

### C

[¶ 14] In the prior appeal, Daniel Frisk argued the stipulated order could not be extended because the parties agreed to limit the duration of the order to six months, and because the parties agreed to this time limit, they were bound by that agreement. *Frisk*, 2005 ND 154, ¶ 4, 703 N.W.2d 341. We considered his argument in the first appeal, but we failed to adopt

that argument and instead reversed the order and remanded with instructions for the district court to make specific findings about domestic violence. We said, "[w]hether a party files a new application for a protection order, N.D.C.C. § 14–07.1–02(1), or files a petition to amend the stipulated protection order or agreement, N.D.C.C. § 14–07.1–02(6), is a procedural matter of lesser importance than the substantive question of whether the applicant or petitioner has satisfied the threshold burden of demonstrating 'actual or imminent domestic violence,'...." *Id.* at ¶ 13. The law of the case doctrine applies when an appellate court has decided a legal question and remanded to the district court for further proceedings. *Fandrich v. Wells County Bd. of County Comm'rs,* 2000 ND 181, ¶ 28, 618 N.W.2d 166. "Whether [an] appeal was decided correctly or not, the questions that were raised or could have been raised in that case will not be re-examined." *Pearce v. North Dakota Workmen's Compensation Bureau,* 68 N.D. 318, 325, 279 N.W. 601, 603 (1938). *See also Fandrich,* at ¶ 28.

[¶ 15] If we had agreed with Daniel Frisk's argument, we would not have remanded to the district court for consideration of whether the evidence supported a finding of actual or imminent danger of domestic violence. We concluded the stipulated protection order could be extended if the district court made a finding of domestic violence, and we decline Daniel Frisk's invitation to re-examine this issue.

### IV

[¶ 16] Daniel Frisk argues the district court was required to hold a full hearing on remand before issuing the amended protection order, because no previous findings of domestic violence had been made.

[¶ 17] "When this Court specifies a defect to be cured and remands for redetermination of an issue without specifying the procedure to be followed, the [district] court need only rectify the defect in a manner consistent with our opinion and conformable to law and justice." *Kautzman v. Kautzman,* 2000 ND 116, ¶ 7, 611 N.W.2d 883. *See also Moch v. Moch,* 1998 ND 95, ¶ 9, 578 N.W.2d 129 (when this Court specifies which defects the district court must cure, the district court only needs to rectify those defects and proceed in a manner consistent with this Court's opinion); *Kern v. Kelner,* 75 N.D. 703, 713–14, 32 N.W.2d 169, 174 (N.D.1948) (when this Court does not give the district court specific instructions in remanding for further proceedings, the district court is "free to make any order or direction in the further progress of the case not inconsistent with the decision and opinion of this court and conformable to law and justice").

[¶ 18] In *Frisk,* we instructed the district court to determine "whether the evidence supports a finding that Daniel Frisk poses an 'actual or imminent' danger of domestic violence to Krista Frisk." *Frisk,* 2005 ND 154, ¶ 14, 703 N.W.2d 341. We did not instruct the district court to hold a full evidentiary hearing on remand. A district court has discretion to hold further hearings or accept further evidence. *See Kautzman,* 2000 ND 116, ¶ 7, 611 N.W.2d 883.

[¶ 19] On remand, Daniel Frisk requested a hearing and an opportunity to present testimony in support of his objection to the proposed amended protection order. A hearing was held on October 19, 2005, and the district court heard arguments on the issue of whether the stipulated order could be extended or whether the court could make findings of domestic violence based on the evidence already before the court, which were the issues Daniel Frisk raised in his brief objecting to the amended protection order. Daniel Frisk

argued the case should be dismissed because the stipulated order had expired and could not be extended. He did not make any other arguments, offer any testimony, or raise any other issues at the hearing. Daniel Frisk did not request another hearing to present further evidence, and the district court did not conclude another hearing was necessary because the court determined it had sufficient evidence to make a decision.

[¶ 20] Daniel Frisk did not request an evidentiary hearing and therefore he cannot complain that the court erred in failing to hold a hearing. This Court did not specify the procedure the district court was required to follow on remand, and therefore it was in the court's discretion whether to hold a further evidentiary hearing. We conclude the district court did not abuse its discretion in failing to hold an evidentiary hearing on remand.

## V

[¶ 21] Daniel Frisk argues the district court erred in including in its protection order the findings of fact from the parties' divorce proceedings. Krista Frisk argues the court did not err because almost all the incidents in the findings in the divorce decree were presented to the court in the protection order proceeding, the findings from the divorce proceeding were not the primary basis for the protection order, there was sufficient evidence before the court without considering the incidents from the divorce proceeding, and the court took judicial notice of the divorce proceeding.

## A

[¶ 22] We have said a district court may take judicial notice of evidence presented in a closely related case, particularly when the judge and parties are the same in both proceedings. *See State v.*

*Bergstrom*, 2006 ND 45, ¶ 18, 710 N.W.2d 407. When one party requests the court take judicial notice, upon notice of that request, the opposing party has advance warning that judicial notice is being contemplated. 1 *Weinstein's Fed. Evid.*, § 201.30[4], p. 201–63 (2d ed.2006). Parties have the right to challenge the court's decision to take judicial notice, but the burden is on the challenging party to request the opportunity to be heard. N.D.R.Ev. 201(e); *Bender v. Beverly Anne, Inc.*, 2002 ND 146, ¶ 5, 651 N.W.2d 642. A request for an opportunity to be heard to challenge the court's decision to take judicial notice may be made after judicial notice has been taken if there was no prior notification of the court's intent to take judicial notice. N.D.R.Ev. 201(e).

[¶ 23] During the October 19, 2005, hearing on remand, Krista Frisk's attorney said, "I don't think it's necessary that we have another evidentiary hearing. We've had two, plus seven or so days of divorce trial, which also focused on the issue of domestic violence as well." This was a request for the judge, who was the judge in the divorce case, to take judicial notice of the evidence presented in the divorce trial. The court did not grant or deny this request, and Daniel Frisk did not object or address this request. The court issued the amended protection order clearly stating its basis for its finding of domestic violence, including the adoption of findings 10(j) from the parties' divorce. Daniel Frisk did not object to the court's decision to take judicial notice, and he did not request an opportunity to be heard to challenge the court's decision. We conclude the district court did not err in taking judicial notice of the findings in the divorce case.

## B

[¶ 24] Assuming the district court erred in relying on the findings from

the divorce proceeding, we conclude that error would be harmless because the court's other findings are sufficient to support the court's finding of domestic violence. The district court made a finding of domestic violence, and stated its finding was based upon the following:

1. Threatening statements to Krista that Daniel would blow up her parents['] boat and that she would find them floating in Lake Superior.

2. Daniel appeared to be following Krista while she was driving when she received a phone call from Daniel where he stated that someone was following him in his vehicle and trying to kill him. During this call, Daniel indicated that he had a gun from the office safe and there would be carnage because he would commit suicide by cop. Fearful, Krista drove to her parents['] home where Daniel partially blocked the driveway. Because of Daniel's behavior during this incident, the police were concerned enough to contact Daniel's psychiatrist who recommended that Daniel be picked up for evaluation.

3. After entry of the stipulated Order of June 3, 2004, Daniel continued "harassment" type behavior and "taunting" behavior toward Krista including driving by her home, retrieving property from the home without waiting for law enforcement to arrive, showing up at the children's school at a time when he knew that Krista would be there to pick them up and attempting to communicate with Krista through gestures and facial expressions when she is in her vehicle at the children's school.

Krista Frisk presented evidence to the district court in her affidavits and at the June 3, 2004, and December 15, 2004, evidentiary hearings to support those three findings.

[¶ 25] In Krista Frisk's affidavit, dated May 28, 2004, she stated during the 2003 Christmas holiday, Daniel Frisk threatened to hire a convicted criminal to kill her parents. She claimed Daniel Frisk said, "Don't be surprised if you find your parents floating in Lake Superior," and told her he was going to blow up her parents' boat and make it look like an accident. Daniel Frisk's attorney questioned Krista Frisk about this incident during the June 3, 2004, evidentiary hearing.

[¶ 26] In the May 28, 2004, affidavit, Krista Frisk claimed on May 10, 2004, Daniel Frisk showed up at the children's tae kwon do lesson and said, "You have a problem. You just lost your kids," and then he left. Krista Frisk claimed:

He called me on my cell phone a few minutes later, stating he had just retrieved his gun from [his law partner's] safe. He stated that someone is following him and trying to kill him. He made the statement, "There is going to be carnage." After leaving Tae Kwan Do, I eventually drove to my parents['] home in South Fargo. When I arrived, I found that Daniel was blocking my vehicle from driving into my parents['] driveway. My parents called 911, however, by the time the police arrived, Daniel had left.

That night, I stayed at my parents['] home with the children. At 5:00 the next morning, Daniel began calling my parents['] home, asking if I was "out at the bar." He called at least nine times that morning. At 7:30 a.m. on May 11, 2004, Daniel was seen parked down the street from my parents['] home. The police arrived and, later that day, took him to the hospital for a psychiatric evaluation. One of the officers that interviewed me ... stated that he could tell by Daniel's body language that Daniel was extremely agitated. The officer

called Daniel "a ticking time bomb." I was later informed that Daniel's physician, Jack Lind, had signed an emergency order of committal.

Krista Frisk testified about this allegation at the June 3, 2004, evidentiary hearing. Although Daniel Frisk did not testify at the June 3, 2004, hearing, there was testimony from Dr. Lind, Daniel Frisk's psychiatrist, about his application for Daniel Frisk's emergency commitment; and testimony from Daniel Frisk's law partner about Daniel Frisk's access to the law firm's safes, including the safe Krista Frisk claimed Daniel Frisk said he took the gun from.

[¶ 27] The court also received evidence from Krista Frisk about Daniel Frisk's continued harassing and taunting behavior after the stipulated order was entered. This included Krista Frisk's affidavit and testimony at the December 15, 2004, hearing that Daniel Frisk removed items from the parties' marital home without the presence of law enforcement officers, disregarding the stipulated order which excluded him from the residence; Daniel Frisk was present at the visitation exchanges, although the stipulated order required the children's grandparents to participate in the exchanges to limit contact between the parties; Daniel Frisk's girlfriend passed by Krista Frisk's home and tried to talk to the parties' children; Daniel Frisk attempted to communicate with Krista Frisk at court hearings; and Daniel Frisk walked by Krista Frisk's vehicle while she was transporting the children to and from school. These acts occurred after the stipulated protection order went into effect, and the court found these acts were an attempt to harass and taunt Krista Frisk.

[¶ 28] Although Daniel Frisk claims these incidents are too remote in time for the court to rely on them as the basis for its finding of actual or imminent domestic violence, we disagree. Past abu-sive behavior is relevant in determining whether the threat of domestic violence is actual or imminent. *Lovcik v. Ellingson*, 1997 ND 201, ¶ 17, 569 N.W.2d 697. While the district court can consider past abusive behavior, in this case much of the behavior was in close proximity to Krista Frisk's application for the extension. The incident which resulted in Daniel Frisk's emergency psychiatric evaluation occurred in May 2004, and Krista Frisk applied for the extension in November 2004. The harassing and taunting behavior occurred in the months immediately preceding Krista Frisk's application for extension. These incidents are not remote in time. We conclude there is sufficient evidence to support the court's findings, and the findings alone are sufficient to support the court's finding of domestic violence.

## VI

[¶ 29] On remand, the district court was instructed to consider "whether the evidence supports a finding that Daniel Frisk poses an 'actual or imminent' danger of domestic violence to Krista Frisk." *Frisk*, 2005 ND 154, ¶ 14, 703 N.W.2d 341. After concluding there was evidence presented during the December 15, 2004, hearing that could plausibly lead to a finding of "actual or imminent" domestic violence, we remanded the case concluding it was not clear from the court's order whether the court thought it was necessary to make a finding of "actual or imminent" domestic violence. *Id.* at ¶ 12. We conclude the court made findings of domestic violence as it was required to do on remand. The court's finding is supported by the evidence and is not clearly erroneous. We therefore affirm the amended domestic violence protection order.

[¶ 30] GERALD W. VANDE WALLE, C.J., THOMAS J. SCHNEIDER, D.J., DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ.

[¶ 31] The Honorable THOMAS J. SCHNEIDER, D.J., sitting in place of MARING, J., disqualified.