2007 ND 51

**Heather ODDEN, Plaintiff and Appellee,**

v.

**Mark RATH, Defendant and Appellant.**

**No. 20060170.**

Supreme Court of North Dakota.

April 10, 2007.

Suzanne M. Schweigert, Smith Bakke Porsborg & Schweigert, Bismarck, ND, for plaintiff and appellee. No appearance.

Loren C. McCray, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Mark A. Rath appealed from a district court order extending a domestic violence protection order against him for two additional years. Rath argues the district court abused its discretion because no evidence justified an extension of the order. We affirm.

I

[¶ 2] Mark Rath and Heather Odden dated for about ten months in 2004 and lived together for part of that time. They have a two-year-old son who was born near the end of their relationship. Since their separation, the parties have been involved in multiple legal actions stemming from their turbulent relationship.

[¶ 3] In January 2005, Odden filed a petition for a domestic violence protection order against Rath. The district court dismissed the petition because of insufficient evidence. Shortly thereafter, the City of Bismarck charged Rath with harassment for making repeated telephone calls to Odden. On March 28, 2005, Rath was convicted of harassment in municipal court. Following this conviction, Rath contacted Odden repeatedly through text messages, instant messages, and voicemail. He sent Odden approximately thirty-five instant messages on her computer in the span of three days. Rath appealed the harassment conviction to the district court and was acquitted after a bench trial. Additionally, Rath was charged with stalking Odden in late March 2005, but the charge was eventually dismissed.

[¶ 4] In April 2005, Odden again filed a petition for a domestic violence protection order against Rath. The petition alleged that since their separation, Rath had harassed her with multiple electronic messages and voicemails, some of which were threatening. The petition also alleged that in November 2004, when Odden was seven months pregnant, Rath cornered her and yelled curses and threats at her for more than an hour. According to Odden, Rath punched a door twice during the incident and asked whether she would rather he hit the door, the wall, or her. On April 15, 2005, after holding a full hearing, the district court issued a domestic violence protection order against Rath for one year.

[¶ 5] In late March 2006, Odden moved to extend the protection order before it expired on April 15, 2006. In her motion for an extension, Odden claimed that she still felt threatened by Rath and wished to have the protection order in place due to the ongoing custody dispute over their son. She also alleged that Rath had violated the protection order by e-mail, and that he had been talking about her obsessively on his web site. The district court issued a temporary order for renewal, which stated that the protection order was to remain in effect pending a full hearing on Odden's request for an extension.

[¶ 6] The district court held the extension hearing on April 4, 2006. At the hearing, the district court heard testimony from both Odden and Rath. Odden testified that Rath had obeyed the no-contact protection order, with the exception of an e-mail she received on August 10, 2005. Despite this minimal contact, Odden claimed that she was still afraid of Rath and that she felt the protection order was necessary to keep him from contacting her. In particular, Odden pointed to Rath's personal web site, where he posted multiple messages discussing her and their custody dispute, as evidence that he still posed a threat to her and their son. Odden stated that she had concerns about Rath contacting her if the custody issue was not resolved in his favor.

[¶ 7] Both parties testified in detail about the e-mail which Odden received from Rath on August 10, 2005. Odden also offered a copy of the e-mail into evidence. Rath's name was part of the sender's e-mail address, and the subject was "Mark Rath's invitation." The e-mail invited Odden to join a particular company's Mobile Friends Network to connect with Rath. The text of the e-mail stated, "Mark says, 'This looks like a really good way for us to stay in touch.'" In her testimony, Odden acknowledged that the e-mail was likely generated and sent by the company. However, she also stated that Rath had obviously kept her information in his e-mail address book, and that Rath likely had to approve any mailing sent to his entire e-mail list.

[¶ 8] Rath testified that he was not aware of the e-mail until Odden offered it as evidence against him. He claimed that he had given the mobile networking company access to his e-mail address book, but he had forgotten that Odden's e-mail address was still in it. Rath admitted he had to approve the sending of that particular e-mail to the addresses in his address book by providing the company with his user name and password. He also stated that he had one to two hundred e-mail addresses in his address book, and that he did not clean up or maintain the list.

[¶ 9] Additionally, the district court received detailed evidence about Rath's web site, which was a message board called "Ravenz Poems." On the web site, Rath posted messages where he discussed Odden and their custody dispute at length. For example, he posted a message on January 28, 2006, which stated in part:

Haha it must kinda suck for heather knowing that all of her hard work lying the last year has done absolutly nothing. And even if she did manage to get supervised visitation, it actually plays in my behalf, for the next couple months I'll have access to detailed records and witnesses to testify for me.

She never learns, and honestly in my opinion i think she needs to stop acting like a selfish little brat. She's never going to keep me out of [our son's] life, she could run again, but she'd eventually get caught and then lose [him] herself. If you think about it, she hasn't hurt me at all this last year, yeah it sucks knowing I couldn't see my son, but i also knew her allegations were not bad enough to not get visitations. I never hurt her so why the hell would she think i would now that I was fighting for custody of our son … yea … that makes a whole lot of sense.

She can say i need professional help, but yet she knows nothing about me, people change and i'm no where near the same person I was a year ago, oh I still like playing video games, mabey i'll buy a game when i know i shouldn't, or buy a movie when i shouldn't, but there is nothing wrong with that. And i'm not the one sitting there playing this delusion to others that I'm in any type of danger from a person who may have yelled at me, and said some other things, but had never hurt me in anyway physically. You see that just doesn't fly, someone yelling at you isn't grounds to keep their son away, and honestly if she wouldn't have kept [our son] from this last year, none of this would have happened. That something she doesn't seem to understand either.

Rath also posted multiple pictures of their son, which he took during his supervised visitation, on the web site.

[¶ 10] In her testimony, Odden admitted she had not seen any threats of violence toward her in Rath's web postings. However, she characterized Rath's repeated message posts about her as "obses-

sive" and "awful stuff." She also objected to Rath's practice of posting pictures of their son on his web site, which she claimed was dangerous because anybody could access the pictures on the public site.

[¶ 11] Rath testified that he discussed many personal matters on the message board, and therefore he often posted about Odden because of his ongoing struggle with her. He claimed that he had only posted nine messages about Odden on his web site, while other members had made thirty-five replies to those messages. Rath stated his web site had twenty-four registered members, some of whom were personal friends and others whom he had met only online. He also stated that his entire web site used to be open to the public. However, after he became aware that Odden was accessing the web site and offering its contents as evidence in their legal proceedings, he created a password-protected forum for the custody topics. Rath also claimed that Odden had nothing to fear because he had no intent of contacting her.

[¶ 12] After considering the evidence presented at the hearing, the district court issued an order extending the domestic violence protection order until April 15, 2008. The district court reasoned that Odden did not need to show actual or imminent domestic violence in order to obtain an extension of the protection order. The district court concluded there was sufficient evidence to extend the order "[b]ased upon the petitioner's fear of the respondent, respondent's email and his website."

II

[¶ 13] Whether there is domestic violence sufficient to support the issuance of a protection order is a question of fact which will be overturned on appeal only if it is clearly erroneous. *Frisk v.* *Frisk (Frisk II)*, 2006 ND 165, ¶ 5, 719 N.W.2d 332. However, we review a district court's decision to extend an existing protection order under an abuse of discretion standard. *Id.* A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Frisk v. Frisk (Frisk I)*, 2005 ND 154, ¶ 6, 703 N.W.2d 341.

[¶ 14] Section 14–07.1–02, N.D.C.C., governs the issuance and extension of domestic violence protection orders. In order for the district court to issue a protection order after a hearing on the merits, the petitioner must prove actual or imminent domestic violence by a preponderance of the evidence. *Ficklin v. Ficklin*, 2006 ND 40, ¶ 12, 710 N.W.2d 387; *see also* N.D.C.C. § 14–07.1–02(4). Alternatively, the district court may issue a protection order following a stipulation or agreement between the parties. *See Frisk I*, 2005 ND 154, ¶¶ 10–11, 703 N.W.2d 341.

[¶ 15] Once a protection order has been issued, either after a hearing on the merits or by stipulation of the parties, the petitioner may seek an extension of the order under § 14–07.1–02(6). *See Frisk II*, 2006 ND 165, ¶¶ 7–8, 719 N.W.2d 332; *Gaab v. Ochsner*, 2001 ND 195, ¶ 5, 636 N.W.2d 669. Section 14–07.1–02 does not expressly provide for the extension of protection orders. However, § 14–07.1–02(6) states that the district court "may amend its order or agreement at any time upon subsequent petition filed by either party." We have held that if the petitioner moves for an extension of the protection order, the district court may grant the extension under this amendment provision. *See Frisk II*, at ¶¶ 7–8; *Gaab*, at ¶ 5.

[¶ 16] In order to obtain an extension of the protection order, the petitioner need not make a second showing of

actual or imminent domestic violence. *Frisk II*, 2006 ND 165, ¶ 7, 719 N.W.2d 332; *Gaab*, 2001 ND 195, ¶ 5, 636 N.W.2d 669. However, the petitioner must meet the threshold burden of showing actual or imminent domestic violence at some point prior to obtaining the extension. *Frisk I*, 2005 ND 154, ¶¶ 9, 13, 703 N.W.2d 341. Therefore, if the district court issued the original protection order after holding a hearing on the merits and finding actual or imminent domestic violence, the petitioner is not required to make a second showing to obtain an extension. *Id.* at ¶ 9. Alternatively, if the district court entered the protection order following a stipulation which contained no finding of domestic violence, the petitioner must prove actual or imminent domestic violence by a preponderance of the evidence before the district court may grant an extension. *Id.* at ¶¶ 10–11, 13.

■ [¶ 17] In this case, the district court issued the original protection order against Rath after holding a full hearing and finding actual or imminent domestic violence. Therefore, Odden was not required to make a second showing of actual or imminent domestic violence in order to obtain an extension. The sole remaining issue is whether the district court abused its discretion when it extended the protection order based on the evidence presented at the hearing.

[¶ 18] Rath contends the district court had no basis on which to extend the domestic violence protection order against him. Specifically, he argues the evidence did not meet the standard for extension of a protection order contained in the Minnesota Domestic Abuse Act. The Minnesota Domestic Abuse Act provides:

> The court may extend the terms of an existing order or, if an order is no longer in effect, grant a new order upon a showing that:

(1) the respondent has violated a prior or existing order for protection;

(2) the petitioner is reasonably in fear of physical harm from the respondent;

(3) the respondent has engaged in acts of harassment or stalking within the meaning of section 609.749, subdivision 2; or

(4) the respondent is incarcerated and about to be released, or has recently been released from incarceration.

A petitioner does not need to show that physical harm is imminent to obtain an extension or a subsequent order under this subdivision.

Minn.Stat. Ann. § 518B.01, subd. 6a (Supp. 2007). Relying on our citation of this statute in *Gaab v. Ochsner*, 2001 ND 195, ¶ 5 n. 1, 636 N.W.2d 669, Rath argues we implicitly required similar additional facts in order to justify an extension. However, in *Gaab*, we cited the Minnesota statute to show that our Legislature could have required the petitioner to make a specific showing to obtain an extension of a protection order if it so desired. *Id.* The same rationale applies here. If the Legislature had intended to impose a standard similar to the Minnesota Domestic Abuse Act, it could have done so. Because N.D.C.C. § 14–07.1–02 does not contain such a provision, we decline to apply it by judicial fiat.

[¶ 19] Under the facts of this case, we conclude the district court acted reasonably when it extended the domestic violence protection order against Rath.

[¶ 20] Rath violated the original protection order by sending Odden an e-mail on August 10, 2005. *See Gaab*, 2001 ND 195, ¶ 7, 636 N.W.2d 669 (considering the occurrence of protection order violations in an extension analysis). The protection order specifically prohibited Rath from having messages delivered to Odden through

anyone other than his attorney or a law enforcement officer. Thus, the e-mail was a violation of the order even though it was generated by a mobile networking company. Although Rath claims he sent the e-mail to Odden by mistake, her e-mail address remained in his e-mail address book. After Odden obtained a protection order against him, Rath had the duty to ensure that he did not send Odden any e-mail messages, even through mass mailings.

[¶ 21] Rath did not threaten violence against Odden in his message board postings, but he discussed Odden in a way that was alarming to her, considering the history between the parties. The record contains three messages which Rath posted from mid-January to February 2006, after the domestic violence protection order was entered on April 15, 2005.

[¶ 22] Odden testified that she was afraid of Rath and that she was concerned he would contact her without a protection order in place. The district court extended the protection order based in part upon Odden's fear of Rath, so the district court clearly found her testimony to be credible. We give great deference to a factfinder's opportunity to observe the witnesses and determine credibility. *Flattum–Riemers v. Peters–Riemers*, 2001 ND 121, ¶ 20, 630 N.W.2d 71.

[¶ 23] Finally, the district court received some evidence about the turbulent history between the parties, particularly with regard to their prior legal actions. The context and history of the relationship between the parties is a relevant factor for the district court to consider when issuing a protection order. *See Ficklin v. Ficklin*, 2006 ND 40, ¶ 12, 710 N.W.2d 387. Therefore, the district court may also consider the parties' history when determining whether to extend a protection order. Although the district court should not extend a protec-

tion order based solely on the history between the parties, it remains a relevant factor to consider when determining whether an extension is warranted. Here, prior to the issuance of the protection order, Rath had a history of contacting Odden in a way that she found harassing. Based on this history, Odden feared that he would contact her again if no protection order was in place, especially in light of the pending custody proceedings.

[¶ 24] After considering all the evidence, we conclude the district court did not abuse its discretion when it extended the domestic violence protection order against Rath. A petitioner's fear alone, with no other supporting facts, is not enough to justify the extension of a protection order. However, in this case, the district court was presented with additional evidence beyond Odden's testimony about her continuing fear of Rath. Based on Rath's e-mail to Odden, his message board postings about Odden, and the history between the parties, the district court reasonably determined that an extension of the protection order was warranted.

### III

[¶ 25] We affirm the district court's order extending the domestic violence protection order against Rath.

[¶ 26] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.