2009 ND 211

**Brenna Marie SAVILLE, f/k/a Brenna Marie Ude, Petitioner and Appellee**

v.

**Brandon Lee UDE, Respondent and Appellant.**

No. 20090070.

Supreme Court of North Dakota.

Dec. 15, 2009.

marck, ND; and Thomas Myron Jackson (on brief), Bismarck, ND, for petitioner and appellee.

Brandon Ude (on brief), self-represented, respondent and appellant.

CROTHERS, Justice.

[¶ 1] Brandon Ude appeals the district court's extension of the domestic violence protection order against him. We affirm, concluding the district court acted within its statutory authority and did not abuse its discretion in extending the protection order.

I

[¶ 2] Ude and Brenna Ude–Fried ("Fried") were married in May 2004. Fried applied for a domestic violence protection order against Ude in December 2006, claiming Ude slapped her and threw her against a doorway. The district court issued a temporary protection order and set a hearing on the issuance of a permanent protection order. Before the permanent protection order hearing took place, Ude confronted Fried at her home and assaulted her male friend with a brick. Ude was arrested for aggravated assault and was in jail pending trial on the date set for hearing on the permanent protection order.

[¶ 3] Ude's incarceration prevented him from attending the hearing to determine whether the protection order should be permanently issued. At the hearing, Fried testified Ude had violated the temporary protection order on multiple occasions by harassing her with telephone calls and by confronting her in her yard. On December 27, 2006, the district court entered a two-year protection order against Ude. The protection order prevented Ude from contacting Fried and required Ude's

Kelsee Jean Macintosh (argued), Fargo, ND; Bradley D. Peterson (appeared), Bis-

visitation with the parties' two children to be exercised at his parents' home.

[¶ 4] In January 2007, Fried requested the protection order be amended to eliminate Ude's visitation rights. Fried claimed since the issuance of the permanent protection order Ude had unlawfully entered her home, stole from her, vandalized vehicles in her driveway and attempted to kill her by flooding her home with natural gas. The district court denied Fried's request, but modified the protection order to limit Ude's visitation to supervised visits at the Family Safety Center in Bismarck, North Dakota.

[¶ 5] Ude and Fried were divorced July 24, 2007. The parties stipulated that Fried would have sole physical custody of the children and that Ude would have visitation of every other weekend, every Wednesday evening, four weeks during the summer and every other major holiday.

[¶ 6] On August 8, 2007, Ude pled guilty to charges stemming from his attack on Fried's friend. The charges included aggravated assault, violation of a domestic protection order, interference with a telephone during an emergency call and two charges of stalking. Ude was sentenced to five years in prison and was incarcerated at the James River Correctional Center in Jamestown, North Dakota. On September 26, 2007, Ude sent a letter to the district court seeking clarification of his visitation rights and requesting supervised visitation with his children at the correctional center. The district court denied Ude's request on April 3, 2008, and Ude's visitation remained limited to supervised visits at the Family Safety Center.

[¶ 7] In December 2008, Fried applied for a one-year extension of her protection order against Ude. She claimed that Ude was up for parole in April 2009 and that she was fearful of what he would do upon release if a protection order was not in place. Ude responded with an application to amend the protection order to allow supervised visitation in prison. At a hearing on the issue, Fried claimed she had been saving money to install video cameras on her home because she was terrified of what Ude would do when he got out of prison. Ude testified, acknowledging his past mistakes and reiterating that he only wanted visitation with his children.

[¶ 8] During the hearing, the district court stressed that it would not determine what visitation arrangement was in the best interests of the children and that if either party wanted to address that issue, it should be done through the divorce file. The court found Ude "a credible threat due to the actions in the criminal matter on Ms. Fried's new husband, the aggravated assault, and the violation of the protection order on two prior occasions." Fried's protection order was extended for one year, with Ude retaining the right to supervised visitation at the Family Safety Center. Ude timely filed this appeal.

## II

[¶ 9] Ude argues the district court erred in extending the protection order against him because his incarceration prevented him from being a continued threat to Fried. Domestic violence protection orders are governed by N.D.C.C. § 14–07.1–02, and "[t]he court may amend its order or agreement at any time upon subsequent petition filed by either party." N.D.C.C. § 14–07.1–02(6); *see Frisk v. Frisk*, 2006 ND 165, ¶ 7, 719 N.W.2d 332. "[A] trial court's decision to extend an existing protection order is reviewed under an abuse of discretion standard." *Gaab v. Ochsner*, 2001 ND 195, ¶ 6, 636 N.W.2d 669. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner or when it misinterprets or misapplies the law." *Peters–*

*Riemers v. Riemers,* 2001 ND 62, ¶ 7, 624 N.W.2d 83.

[¶ 10] Before a protection order may be extended, "the petitioner must meet the threshold burden of showing actual or imminent domestic violence at some point prior to obtaining the extension." *Odden v. Rath,* 2007 ND 51, ¶ 16, 730 N.W.2d 590. When the original protection order has been issued after a hearing on the merits where actual or imminent domestic violence was found, the petitioner's burden is satisfied without having to show a second act of domestic violence. *Id.*

[¶ 11] Here, the district court issued the original protection order after holding a full hearing. At the hearing, Fried testified Ude had been violent towards her on many occasions, including slapping her face at a party, grabbing her wrists during arguments and throwing her against a door jam during a confrontation. The district court found actual or imminent domestic violence existed and issued a permanent protection order. This finding satisfied Fried's "burden of showing actual or imminent domestic violence at some point prior to obtaining an extension." *Odden,* 2007 ND 51, ¶ 16, 730 N.W.2d 590.

[¶ 12] After the petitioner has shown actual or imminent domestic violence has occurred prior to requesting the extension, the court considers the factual situation surrounding the extension application.

[¶ 13] One factor the court may consider is threats of violence. *Odden,* 2007 ND 51, ¶ 21, 730 N.W.2d 590. In *Odden,* the respondent was posting messages on his website that discussed the petitioner and their custody dispute. *Id.* Although the postings did not expressly threaten violence against the petitioner, they were alarming, given the parties' history. *Id.* We considered the postings in our analysis and upheld the extension of the protection order. *Id.* at ¶ 25.

[¶ 14] Ude argues the district court abused its discretion in extending the protection order because his incarceration precludes him from being a continued threat to Fried. However, Ude acknowledged in his brief, "I am currently being held at [Missouri River Correctional Center] in Bismarck, ND it is a minimum security facility with no fences of any kind. I currently work for the building maintanence [sic] department, which takes me offsite sometimes." By Ude's admission, the restraints of his confinement are largely self-imposed, rendering the possibility of escape and continued violence against Fried legitimate concerns. This factor weighs in favor of extending the protection order.

[¶ 15] A district court also may consider previous protection order violations. In *Gaab,* this Court upheld the extension of a protection order in part because the respondent violated past protection orders by making harassing telephone calls and driving by the petitioner's apartment. 2001 ND 195, ¶ 7, 636 N.W.2d 669. *See also Odden,* 2007 ND 51, ¶ 20, 730 N.W.2d 590 (upholding extension of protection order based, in part, on respondent's previous violation of protection order by sending e-mail to petitioner). Here, Ude violated the previous protection order against him by telephoning Fried, by stalking her, by cutting her telephone lines and by confronting her in her yard. These previous violations weigh in favor of extending the protection order.

[¶ 16] Another factor the district court considers is the petitioner's fear of the respondent. While fear alone is not enough to justify extending a protection order, fear justified by the respondent's conduct is relevant. *Odden,* 2007 ND 51,

¶ 24, 730 N.W.2d 590. In *Odden*, the petitioner seeking the extension of a protection order was afraid of the respondent based on past protection order violations, extensive blogging concerning the petitioner and the parties' turbulent history. *Id.* Here, the district court properly considered Fried's fear of Ude. Fried stated she was terrified of what Ude would do when he was released from prison because "[h]e will either come out and leave us alone or he's going to come out a lot angrier than he was when he went in." Fried is now married to the man Ude assaulted in her front yard, and the couple have been saving money to purchase security cameras for their home in anticipation of Ude's release. Fried's justified fear of Ude weighs in favor of extending the protection order.

[¶ 17] The district court also may consider the history of the parties' relationship in determining whether to extend a protection order. *Odden*, 2007 ND 51, ¶ 24, 730 N.W.2d 590. In *Odden*, the parties' litigious relationship and history of harassment supported extending a protection order. *Id.* at ¶ 23. Here, the district court recognized the complexity of the relationship between Ude, Fried and Fried's new husband. The court was aware that Fried and her current husband were having an extra-marital affair while Fried was married to Ude and that Ude was serving a prison sentence for an aggravated assault upon Fried's current husband. The complex and violent nature of the relationship between the parties weighs in favor of extending the protection order.

[¶ 18] The district court's decision to extend the protection order was supported by the evidence. While Fried's fear alone was not enough to support the extension, the record indicates Fried's fear was based on Ude's behavior and on the complex relationship the parties shared. Ude has demonstrated his capacity for violence towards both Fried and her current husband, and his potential release from the MRCC in April 2009 could have seriously threatened Fried's safety if a protection order was not in place. The district court did not abuse its discretion in extending Fried's protection order.

### III

[¶ 19] Ude argues the district court erred in extending the protection order against him because doing so interferes with the visitation rights established in the divorce decree. When issuing or extending a protection order, the district court can "[a]ward[ ] temporary custody or establish[ ] temporary visitation rights with regard to minor children." N.D.C.C. § 14–07.1–02(4)(c). The purpose of protection orders is to "protect victims of domestic violence from further harm." *Gaab*, 2001 ND 195, ¶ 5, 636 N.W.2d 669. As a remedial statute, the provisions of § 14–07.1–02 are construed liberally, allowing the courts to accomplish the objectives behind protection orders. *Id.* "Interpretation of a statute is a question of law fully reviewable on appeal." *State v. Brown*, 2009 ND 150, ¶ 15, 771 N.W.2d 267 (quoting *In re M.W.*, 2009 ND 55, ¶ 6, 764 N.W.2d 185).

[¶ 20] We have not decided a case where the visitation schedule established in a violence protection order alters a party's substantive visitation rights as established in an existing divorce decree. In *Steckler v. Steckler*, a 1985 divorce decree gave the father visitation rights to the parties' minor children and required him to provide notice to the mother before picking up the children from her home. 492 N.W.2d 76, 81 (N.D.1992). When a violence protection order was entered against the father in 1992, it altered the pickup and delivery points of the father's

visitation, but "[t]he effect of the protection order [did] not modify the substance of the divorce decree." *Id.* at 81–82.

[¶ 21] In *State v. Boyle*, we addressed conflicting visitation schedules in a divorce decree and a disorderly conduct restraining order. 2009 ND 156, ¶ 11, 771 N.W.2d 604. Scott Boyle fathered a child with Jennifer Carter, and under the terms of a district court order, he was allowed telephone contact with the child. *Id.* at ¶¶ 2, 11; *see Hutchinson v. Boyle*, 2008 ND 150, 753 N.W.2d 881. Subsequent to the district court order establishing Boyle's visitation rights, Carter acquired a disorderly conduct restraining order against Boyle. *Boyle*, at ¶ 11. Addressing the visitation matter, we held that in cases where "there is the potential for a restraining order to conflict with a child custody and visitation order, [ ] courts must ensure the orders are consistent and do not conflict." *Id.*

[¶ 22] The similarities and differences between restraining orders and protection orders are acute. Both devices "seek to quickly and effectively combat volatile situations before any tragic escalation." *Skadberg v. Skadberg*, 2002 ND 97, ¶ 13, 644 N.W.2d 873. However, the court issuing a restraining order has no statutory authority to establish custody or visitation rights regarding the parties' minor children, while the court issuing a domestic violence protection order has the express authority to "award[ ] temporary custody or [to] establish[ ] temporary visitation rights with regard to minor children." N.D.C.C. § 14–07.1–02(4)(c) (governing protection orders); *see* N.D.C.C. § 12.1–31.2–01 (governing restraining orders).

[¶ 23] District courts issuing protection orders should initially attempt to reconcile the substantive visitation terms of the protection order with those in an existing divorce decree. While this is a preferred first step, reconciliation is not required in every case. When there is an irreconcilable conflict between the visitation terms of an existing divorce decree and those in a proposed protection order, the authority vested in the district court by N.D.C.C. § 14–07.1–02(4)(c) allows the visitation terms of the protection order to be controlling.

[¶ 24] Because we do not render advisory opinions, we will not specify the analysis a district court should apply when issuing a protection order that supercedes the visitation terms of an existing divorce decree. *See State v. Hansen*, 2006 ND 139, ¶ 7, 717 N.W.2d 541 (requiring an actual controversy before adjudication). "The adversarial process necessitates and benefits by thorough development of arguments for a change in existing law." *Erickson v. Brown*, 2008 ND 57, ¶ 27, 747 N.W.2d 34.

[¶ 25] Here, altering Ude's visitation rights was within the district court's statutory authority and was consistent with the analysis outlined in this decision. The same violent and turbulent relationship between the parties that justified extending the protection order prevented the district court from reconciling the visitation terms of the extended protection order with those established in the divorce decree. The district court did not err in determining the continued threat of violence by Ude against Fried and her current husband justified the restrictions of Ude's visitation with the children.

IV

[¶ 26] We conclude the district court did not abuse its discretion in extending the domestic violence protection order against Ude. The resulting alteration of Ude's visitation rights was within the district court's statutory authority. We affirm.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.